OPINION OF THE COURT — BY
CHIEF JUSTICE HAMPTON.
This cause is brought before us by appeal from a decree of the chancellor, given at the January term 1824 of the superior court of chancery for the Western district, dissolving injunction and dismissing the bill of the appellant, Andrew Bolls. It is a case of the first impression, arising under our own municipal laws, in the adjudication of which we are not to expect lights and precedents from abroad.
The bill of complainant, which was filed on the 12th of December 1822, states, that on or about the 4th of November 1822, a certain Adam Rum, of Jefferson county in this state, died intestate, without heirs entitled to inherit his estate either real or personal, — that complainant being the largest creditor, on the 23d December 1822, obtained letters of administration on the estate of the said Adam Rum, gave bond and security, and took oath conformably to law. That said estate is indebted to com *162 plainant in a sum between nineteen hundred, arid two thousand dollars, for money advanced for goods sold and delivered, for work and labor, and for other matters of account. That said estate, is much more than sufficient to pay all demands against it. That on the 30th of September 1823, John H. Duncan, escheator general for the state of Mississippi, filed in the office of the clerk of the supreme court of said state, a suggestion, that said Adam Rum died, seized and possessed ofq considerable estate, both real and personal, and that the same had escheated .to the said state of Mississippi. Whereupon the said clerk issued the process contemplated by the 2nd' section of an act, passed by the legislature of the state, on the 13th day of June 1822, entitled “ an act to' reduce into one the several acts concerning escheats.” In pursuance of which process, the sheriff of Jefferson county held an inquest according to the directions of said act, on the 24th of October in the same year, by which it was found, that the said Adam Rum, left no heir capable of inheriting his said estate. Whereupon the said clerk of the supreme court, issued process commanding said sheriff to take into possession the estate both real and personal of the said Adam Rum deceased, and deliver the same to the said escheator general. Bolls considers he has an equitable heir on said estate, as well for his own debt, as all others against it, he having become administrator thereof. Prayer for subpoena injunction and account, to be taken of the debts chargeable on said estate, and for satisfaction thereon. On the 11th December, 1823, the chancellor granted a fiat for an injunction, staying the proceedings from the supreme court, instituted at the instance of the escheator general and on the 12th day of the same month, the injunction issued, which was duly served on the 15th.
The answer which was filed on the 13th, January, 1824, admits the statements contained in the bill as to death and intestacy of the said Adam Rum, his having a considerable estate and his having no person capable of inheriting the real, or receiving distribution of the personal property, and that the said complainant took out letters of administration, on the personal estate, but whether legally or not, submits to the court. Denies that the said Adam Rum died considerably indebted to other persons as stated in the bill, but states the truth to be, that except the claim of said complainant, the said Adam Rum did not owe a sum exceeding 150 dol- *163 liars, of which complainant by his own shewing has paid no part, altho he has had time and means to have done so. That said estate, would remain in the hands of defendant as Escheator general, subject to all legal and equitable claims against it, and that he is ready and willing to pay all just claims against said estate, v, hich shall be legally prefered against it. Admits that, as his duty was, he did institute proceedings as stated in the bill to render such escheated property available to the state, and that by an inquest dated 24lhof October, 1823, the estate of the said Adam Rum, both real and personal, was declared to be escheated in due form of law. Expressly denies that the estate of the said Adam Rum is indebted to complainant between 1900 and 2000 dollars, as charged in the said bill; and also denies that the said estate is indebted, to complainant any thing, upon a fairand just settlement of accounts; states that at the death of the said Adam Rum, he may have been indebted to complainant in some small sum, but this is not admitted, but proof required thereof, and alleges, that ever since the date of his administration, the said complainant has been in possession of the entire estate of the decedent, both real and personal, using and enjoying it, and that he has never accounted to this defendant or to any one else, for the rents issues and profits of said estate. That complainant made on the plantation last year seven bales of cotton not accounted for; has used the pork and stock of said estate for his own benefit, and never accounted for the same, and moreover, hath suffered the personal estate to be greatly impaired contrary to his duty as a faithful trustee, and that though twelve months and more had expired since he assumed the administration, he hath not yet caused his accounts to be settled by the court of probate, or even presented thorn for allowance, manifesting there by in all his conduct, a disposition to produce delays, and to defraud the said estate.
By appraisement and inventory, made an exhibit in complainants bill, it appears that the personal estate of the said Adam Rum, amounted to 6,772 dollars, 42 cents, which amount is determined as its value, by the inquest, made an exhibit in the answer, which also returned that decedent died siezed of 510 acres of land in fee simple, yielding a clear yearly issue of 120 dollars, and that the said personal estate is of the clear yearly value of 580 dollars.
*164 We have examined the statutes with great care and reflection, and fin'á' the case pregnant with difficulties, and shall not flatter ourselves that in the opinion we shall give, it will be our good fortune to satisfy the mind of all parties. On the case made by bill and answer, the later swearing off the equity charged in the former, we are of opinion, that the decretal order of the honorable the superior court of chancery, so far. as it-directed a dissolution of the injunction, was correct, and should be affirmed by us if indeed the chancellor had jurisdiction, and so far as said order directed -a dismissal ofplaintiff’s'bill, it must be vindicated,-if at all,either on the ground of a want of jurisdiction, or of a construction of the several acts “pari ma-teria”' in regard to this subject, each of which grounds we will examine. Though^ the proposition, that an inferior court, whose decisions are supervised' and may be reversed by the supreme court, should nevertheless controll the proceedings of this higher court by its mandatory fiats, strikes the mind with some degree of novelty and inconsistency, yet when we consider of the organization of our judicial system, and the controling powers of a court of chancery over proceedings at law, however sanctioned-by the highest tribunals, we-must-admit the necessity, and in reference to the present system, the-propriety of such interposition and controul.— Neither do we think there is any thing in the argument, which would distinguish original proceedings, on the law side, before the supreme court, and in the case at bar, such argument would go to elevate the doings of the ministerial1 officers of this court,-in relation to escheats, (for .¿he matter is chiefly conducted-by them) above the solemn and deliberate adjudications of this court,- upon full argument and consultation. We are therefore inclined to the opinion, that the jurisdiction belongs to the chancery court to controul these proceedings at. law, on equitable grounds, in the exercise of which power, if it errs, its acts are reversible by this court, not as a court -of law, but as having the highest-chancery supervising powers. So far from impeaching the legality of what has been done, a release of errors, either -express, or implied, admits and sanctions the proceedings at law, which nevertheless, are superseded on account of reasons moving the conscience of the chancellor to the belief that the complainant is entitled to relief, which a court of- law could not afford him.
The act establishing the orphans court system, passed 26th of Novem- *165 Her, 1821, which directs the mode of taking out administration on intes-tates estates, and descent and distribution thereof. The act establishing a literary fund, passed the same day, and the act to reduce into one the laws relating to escheats, passed on the 13th J une, 1822. This reference to dates is made, in order to shew, that the provisions of the two first, were known to the legislature, at the time they passed the last, and that consequently, in case of conflict, the latter should prevail, according to the maxim adopted in regard to the construction of laws. “Leges, posteriores priores contrarias a'brogant.” They being however in some .respects “pari materia” are to be reconciled as far as practicable, and receive the most harmonious construction possible. It will be no infraction of this rule, to admit, if such be the fact, that the last act has made special provisions, excepting particular cases out of the general provisions contained in the first and second.
Under these various laws the true construction would seem to be, that the escheator general is entitled to the custody of all property real and personal of a deceased person dying here without heirs. The debts of the deceased are to be collected by process against the escheator general, by each creditor, and an administrator is not entitled to the custody of the property. This being the view of the law entertained by a majority of the court, ths decree of the chancellor dissolving the injunction must be affirmed.
Judge Ellis concurred with Chief Justice Hampton.
Judge Turner dissented,